UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

\_\_\_\_\_

STEPHEN LOVELY,

     Plaintiff,      Case No. 2:11-cv-204

v.             Honorable R. Allan Edgar

JAMES ARMSTRONG et al.,

     Defendants.

_____/

## OPINION

   This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed as frivolous or for failure to state a claim.

### Factual Allegations

Plaintiff currently is incarcerated in the Saginaw Correctional Facility, but the events giving rise to his complaint occurred while he was being held at the Chippewa Correctional Facility. In his *pro se* complaint, he sues Michigan Department of Corrections (MDOC) Director Patricia Caruso, MDOC Grievance Manager James Armstrong and MDOC Grievance Specialist Veda Dove. Plaintiff also sues the following Michigan State Industries (MSI) officials employed in Lansing: MSI Laundry Business Manager Guirrant, MSI Operations Manager Jay Ketcik and MSI Laundry Chief Administrator Pete Wilson.  In addition, Plaintiff sues the following individuals employed at the Chippewa Correctional Facility: Warden Greg McQuiggin; MIOSHA Administrator Jerry Casey; Assistant Deputy Warden Mitch Perry; Acting Grievance Coordinator R. Storey; Hearings Investigators/Grievance Coordinators Chuck Hassel and (unknown) McLean; MSI Laundry Superintendent Roger Graham; MSI Laundry Supervisors Scott Witmer and Donald Bonnee, Jr.; Corrections Officers (unknown) Wilson and Carrol Willis; SOAHR Officer K. Robbins; Acting Warden/Grievance Respondent John Boynton; Nurses Joseph Damron and Leslie Wight; Mailroom/Accounting Supervisor (unknown) Nylander; Assistant Accountant (unknown) Brown; and GOA Grievance Respondent (unknown) Masker.  Plaintiff also sues Mackinaw Straights Hospital (MSH) Chairman Ronald Mitchell, MSH CEO Rodney Nelson, MSH Inspector John Doe #2, Cheboygan Hospital Interim President Carolyn Riley, and Cheboygan Hospital Inspector John Doe #1.

Plaintiff began working in the MSI laundry facility at Chippewa on January 12, 2007. In the course of his duties in the "pony" area, Plaintiff had direct contact with "large amounts of human blood spillage." (Compl. docket #1, Page ID#10.)  Plaintiff received work violation reports on August 15 and November 27, 2007.  On November 27, 2007, Plaintiff told Defendant Rich that

he was not qualified to work in the pony area.  Rich told Plaintiff that it was up to Defendant Graham, who continued Plaintiff's employment in the pony area.  The following day, Plaintiff requested a meeting with Defendant Graham to discuss safety.  When Plaintiff's request was ignored, Plaintiff sent a kite to Defendant Casey stating that he was not qualified to work in the pony area because he did not have any MIOSHA regulated blood-borne training.  In response to Plaintiff's kite, Casey recommended that Plaintiff file a grievance regarding the matter.

Plaintiff filed a Step I grievance on November 29, 2007 concerning the inhumane conditions at MSI Laundry.  The grievance also described Defendants Graham, Bonnee and Witmer as "racist bullies."  (Compl., Page ID#15.)  Defendant Storey rejected the Step I grievance on December 11, 2007, because it contained multiple issues.  The Step II respondent, Defendant Ketcik, found that the multiple issues were related to the same subject matter, but Plaintiff claims that he denied the grievance without addressing all of the issues.  Defendant Armstrong denied Plaintiff's Step III grievance appeal.

On November 30, 2007, Plaintiff received medical treatment from Defendants Damron and Wight for cuts, scrapes and bruises that he suffered while on his MSI job assignment. Upon Plaintiff's request, Defendant Wight gave him a blood test to check for blood-borne pathogens. Plaintiff complained to Defendants Damron and Wight that he was being forced to work in the pony area without proper training.

While Plaintiff was working at MSI laundry on December 4, 2007, Plaintiff alleges that Defendant Bonnee walked up to him and said in a hushed tone, "[Y]ou wanna start some sh-t, I'll start some sh-t."  (Compl., Page ID#15.)  Plaintiff immediately notified Defendant Wilson about Bonnee's threat, but Wilson failed to take any action against Bonnee.  After Plaintiff returned to his work station, Bonnee approached again and said, "[Y]ou got a problem with me?"  (Compl., Page

ID #15.)  Plaintiff asked Bonnee to summon shift command, but Bonnee refused and walked away. Later that day, Plaintiff filed a grievance against Bonnee for threatening him.  Defendant Witmer denied his Step I grievance and Defendants Ketcik and Armstrong denied his Step II and III grievance appeals, respectively.

On December 6, 2007, Plaintiff claims that Defendant Graham aggressively approached him and inmate Hagalshaw and said, "[Y]ou got something you wanna say to me!" (Compl., Page ID#15.)  Plaintiff perceived Graham's conduct as provoking violence, so he walked away to avoid the altercation.  The following day, Plaintiff filed a grievance against Graham for provoking violence.  Plaintiff's grievance was denied at each step of the grievance process by Defendant Ketcik, Guirrant and Armstrong, respectively.

Plaintiff alleges that on December 12, 2007, Defendant Witmer assigned an additional task to the pony area despite the fact that they were short one worker.  Plaintiff alleges that Whitmer failed to ensure "that Plainiff was fully qualified to work in the pony area to protect Plainiff's safety, from death or serious injury from bloodborne pathogens or worker overload or fatigue."  (Compl., Page ID#12.)

On December 13, 2007, Plaintiff allegedly found a racially charged note in his jumpsuit that said, "black monkey boy!"  (Compl., Page ID#12.)  On the same day, Defendant Bonnee asked for Plaintiff's prisoner identification in an aggressive manner.  Because Plaintiff did not trust Bonnee, he did not comply with Bonnee's request, but reported the incident to Defendant Graham.  Defendant Graham allegedly took Plaintiff's identification and gave it to Bonnee.  Later that day, Graham allegedly fired Plaintiff for looking at him through an office window.  The next day, Plaintiff received a major misconduct report from Bonnee for disobeying a direct order for

- 4 -

refusing to give Bonnee his prisoner identification.  Following a major misconduct hearing on January 3, 2008, the hearing officer found Plaintiff guilty of the charge of disobeying a direct order.

Plaintiff alleges that Defendants Graham, Bonnee and Witmer were aware of his grievance before he was terminated on December 13.  Plaintiff filed a grievance against Defendants Bonnee and Graham on December 19, 2007, asserting that they retaliated against him for filing grievances against them.  The Step I grievance was rejected by Defendant Hessel and his Step II and III appeals were denied by Defendants Perry and Armstrong, respectively.

On December 20, 2007, Plaintiff sent a kite to the Chippewa Correctional Facility Warden's Office inquiring about the quality of training in the MSI laundry pony area.  Defendant Perry responded that Plaintiff was trained in accordance with appropriate MSI laundry standards. Defendant McQuiggin also found that the personal protection equipment provided by MSI Laundry satisfied the "minimum standard" for human blood exposure.  (Compl., docket #1, Page ID#14.) According to McQuiggin, inspectors from Mackinaw Straits Hospital and Cheboygan Hospital concurred with those findings. Plaintiff ultimately received Red Cross MIOSHA regulated blood-borne pathogen training in December 2009, and completed custodial maintenance training in February 2010.  The training Plaintiff received confirmed his belief that he was not provided with adequate protective equipment when he was employed in the MSI laundry.  Plaintiff contends that Defendants were deliberately indifferent to the health and safety risk at the MSI laundry.

On March 13, 2008, Plaintiff sought judicial review in the Gogebic County Circuit Court of his misconduct conviction for disobeying a direct order.  Plaintiff received a response from the court stating that he still owed court costs in a previous civil action.  Plaintiff filed a grievance asserting that the funds owed for the previous lawsuit were removed from his prisoner account and should have been received by the Court.  He further claimed that funds had been removed from his

prisoner account from December 2007 through March 2008 without his knowledge or consent. Plaintiff's grievance was denied at each step of the grievance process by Defendants Brown, Boynton and Armstrong, respectively.  Plaintiff asserts violations of his First Amendment right of access to the courts and his Fourteenth Amendment due process rights.

On October 5, 2009, Plaintiff received a major sexual misconduct report from Defendant Willis.  Willis claimed that Plaintiff locked eyes with her while he was in the TV room gyrating in a sexual manner.  Plaintiff claimed that the charge was false and that he was engaged in an animated conversation with inmate Washington during which he briefly imitated an older prisoner with a medical condition that affected his balance.  Following a hearing on October 21, 2009, Hearing Officer Robbins found Plaintiff not guilty of the sexual misconduct charge.

Plaintiff filed a grievance against Willis asserting staff misconduct, over familiarity, sexual harassment and false reporting.  Defendant McLean rejected the Step I grievance on the ground that it concerned a major misconduct report that would be decided at the major misconduct hearing.  The Step I decision was upheld by Defendant Boynton at Step II and Defendant Dove at Step III.  Plaintiff claims that he initially gave his Step III grievance materials to ARUS Adair for mailing, but Defendant Nylander later discovered that the Step III materials were never sent. Plaintiff filed a grievance regarding the missing Step III materials, which was denied at each step by Defendants Masker, McQuiggin and Dove, respectively.

Plaintiff contends that all of the named Defendants have engaged in a conspiracy to violate his federal rights and thwart his attempts to seek redress through the prison grievance process. He seeks declaratory relief, as well as an injunction to prevent Defendants from engaging in an ongoing conspiracy to violate to his federal right.  Plaintiff also seeks monetary damages.

- 6 -

## Discussion

### I.    Statute of limitations

State statutes of limitations and tolling principles apply to determine the timeliness of claims asserted under 42 U.S.C. § 1983. *Wilson v. Garcia*, 471 U.S. 261, 268-69 (1985).  For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* MICH. COMP. LAWS § 600.5805(10); *Carroll v. Wilkerson*, 782 F.2d 44, 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999).  Accrual of the claim for relief, however, is a question of federal law. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996); *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984).  The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action. *Collyer*, 98 F.3d at 220.[1]  Determining when a plaintiff should have known of his injury "is an objective standard based on an examination of the surrounding circumstances. . . . [A] plaintiff's cause of action accrues when, on the basis of objective facts, the plaintiff should have known of an injury, even if a subjective belief regarding the injury occurs at a later date." *Moll v. Abbott Labs*., 506 N.W.2d 816, 818 (Mich. 2002).  In addition, Michigan law "compels strict adherence to the general rule that "subsequent damages do not give rise to a new cause of action.  The discovery rule applies to the discovery of an injury, not to the discovery of a later realized consequence of the injury." *Id.*  (citing *Larson v. Johns-Manville Sales Corp.*, 399 N.W.2d 1, 7 (Mich. 1986)).

---

[1] 28 U.S.C. § 1658 created a "catch-all" limitations period of four years for civil actions arising under federal statutes enacted after December 1, 1990.  The Supreme Court's decision in *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004), which applied this federal four-year limitations period to a suit alleging racial discrimination under § 1981 does not apply to prisoner claims under 28 U.S.C. § 1983 because, while § 1983 was amended in 1996, prisoner civil rights actions under § 1983 were not "made possible" by the amended statute. *Id.* at 382.

Plaintiff's claims against Defendants McQuiggin, Casey, Perry, Graham, Bonnee, Witmer, Wilson, Damron, Wight, unknown MSH Inspector and unknown CMH Inspector arising from his employment in the MSI laundry are time-barred. Plaintiff was employed in MSI laundry from January 12, 2007, until he was terminated on December 13, 2007. Plaintiff had reason to know of the "harms" done to him at the time they occurred. In fact, Plaintiff alleges that he consistently complained and filed a grievance asserting that he was not being provided with sufficient protective equipment at his job in the MSI laundry to prevent him from contracting blood-borne illnesses, such as HIV and Hepatitis. Hence, his claims accrued no later than December 13, 2007.

The statute of limitations was tolled for the period during which his available state remedies were being exhausted. *Brown v. Morgan*, 209 F.3d 595, 596-97 (6th Cir. 2000). Plaintiff filed several grievances regarding events that occurred during his employment in the MSI laundry: KTF 0712-1264-28c (regarding exposure to blood borne diseases), KTF 0712-1306-17B (regarding Bonnee's alleged threats); KTF 0712-1345-17A (regarding Graham's behavior provoking violence); KTF 0712-1406-28A (regarding retaliation by Defendants Bonnee and Graham). According to the complaint, Plaintiff received Step III responses to all of these grievances no later than April 28, 2008. Plaintiff had three years, until April 28, 2011 to bring a civil rights action concerning those claims. Plaintiff filed the instant complaint no earlier than May 19, 2011,[2] approximately three weeks after the statute of limitations expired.

---

[2] Under Sixth Circuit precedent, the complaint is deemed filed when handed to prison authorities for mailing to the federal court. *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002). Plaintiff signed his complaint on April 28, 2011 and his motion for leave to proceed *in forma pauperis* on May 19, 2011, and his pleadings were received by the Court on May 23, 2011. Thus, the complaint must have been handed to prison officials for mailing at some time between May 19 and 23. For purposes of this opinion, the Court has given Petitioner the benefit of the earliest possible filing date.

Moreover, Michigan law no longer tolls the running of the statute of limitations when a plaintiff is incarcerated.  *See* MICH. COMP. LAWS § 600.5851(9).  Further, it is well established that ignorance of the law does not warrant equitable tolling of a statute of limitations.  *See Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991);  *Jones v. Gen. Motors Corp.*, 939 F.2d 380, 385 (6th Cir. 1991); *Mason v. Dep't of Justice*, No. 01-5701, 2002 WL 1334756, at *2 (6th Cir. June 17, 2002). Accordingly, his claims arising from his employment at the MSI laundry are time-barred.

A complaint "is frivolous where it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  A complaint may be dismissed as frivolous if it is time-barred by the appropriate statute of limitations.  *See Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001).  The Sixth Circuit has repeatedly held that when a meritorious affirmative defense based upon the applicable statute of limitations is obvious from the face of the complaint, *sua sponte* dismissal of the complaint is appropriate.  *See, e.g., Dellis*, 257 F.3d at 511; *Beach v. Ohio*, No. 03-3187, 2003 WL 22416912, at *1 (6th Cir. Oct. 21, 2003); *Castillo v. Grogan*, No. 02-5294, 2002 WL 31780936, at *1 (6th Cir. Dec. 11, 2002); *Duff v. Yount*, No. 02-5250, 2002 WL 31388756, at *1-2 (6th Cir. Oct. 22, 2002).  Accordingly, Plaintiff's claims against Defendants McQuiggin, Casey, Perry, Graham, Bonnee, Witmer, Wilson, Damron, Wight, unknown MSH Inspector and unknown CMH Inspector arising from his employment in the MSI laundry will be dismissed as frivolous.

## II.    **Failure to state a claim**

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

- 10 -

A.       **Respondeat Superior**

Plaintiff sues the following Defendants only by virtue of their supervisory positions: MDOC Director Patricia Caruso, MSI Laundry Chief Administrator Pete Wilson, Cheboygan Hospital Interim President Carolyn Riley, Michigan Straits Hospital CEO Rodney M. Nelson, Mackinaw Straits Hospital Chairman Ronald Mitchell.  Plaintiff claims that these Defendants are "Respondeat superior's [sic] responsible for the custom, conduct and activity of the Defendants named in this civil complaint . . . ."  (Compl., Page ID#26.)

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability.  *Ashcroft*, 129 S. Ct. at 1948; *Monell v. New York City Dep't of Soc. Servs*., 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009).   A claimed constitutional violation must be based upon active unconstitutional behavior.  *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002).   The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act.  *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).   "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 129 S. Ct. at 1948.  Plaintiff has failed to allege that Defendants Caruso, Wilson, Riley, Nelson or Mitchell engaged in any active unconstitutional behavior.  Accordingly, he fails to state a claim against them.

B.       **Grievance Process**

Plaintiff alleges that the following Defendants denied his grievances or grievance appeals or failed to take corrective action in response to his grievances:  Armstrong, Dove, Storey,

Ketcik, Witmer, Guirrant, Hessel, Perry, McLean, Boynton, Nylander, Masker, McQuiggin and Brown. Plaintiff has no due process right to file a prison grievance. The Sixth Circuit and other circuit courts have held that there is no constitutionally protected due process right to an effective prison grievance procedure. *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan,* 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice,* 40 F.3d 72, 75 (4th Cir. 1994). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Wynn v. Wolf,* No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendants' conduct did not deprive him of due process. Likewise, as discussed in the previous section, a claimed constitutional violation must be based upon active unconstitutional behavior. *See Grinter,* 532 F.3d at 575; *Greene,* 310 F.3d at 899. Thus, Defendants alleged failure to act in response to Plaintiff's grievances or grievance appeals fails to state a claim upon which relief may be granted.

Plaintiff further contends that Defendants' conspired to deny him meaningful access to the grievance process. To state a claim for conspiracy, a plaintiff must plead with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly,* 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox,* 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner,* 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch,* 826 F.2d 1534, 1538 (6th Cir. 1987); *Smith v. Rose,* 760 F.2d 102,106 (6th Cir. 1985); *Pukyrys v. Olson,* No. 95-1778, 1996 WL 636140, at *1 (6th Cir. Oct. 30, 1996). A plaintiff's

- 12 -

allegations must show (1) the existence or execution of the claimed conspiracy, (2) overt acts relating to the promotion of the conspiracy, (3) a link between the alleged conspirators, and (4) an agreement by the conspirators to commit an act depriving plaintiff of a federal right. *Lepley v. Dresser*, 681 F. Supp. 418, 422 (W.D. Mich. 1988). "[V]ague allegations of a wide-ranging conspiracy are wholly conclusory and are, therefore, insufficient to state a claim." *Hartsfield v. Mayer*, No. 95-1411, 1996 WL 43541, at *3 (6th Cir. Feb. 1, 1996).

Plaintiff's allegations of conspiracy are conclusory and speculative. His allegations, even viewed in the light most favorable to Plaintiff, describe a number of discrete facts that occurred over a period of time involving numerous individuals. Plaintiff has provided no allegations establishing a link between the alleged conspirators or any agreement between them. He relies entirely on a highly attenuated inference from the mere fact that he has been disciplined by or subjected to objectionable treatment by a variety of prison officials in various circumstances with which he disagreed. As the Supreme Court has held, such allegations, while hinting at a "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556. Instead, the Court has recognized that although parallel conduct may be consistent with an unlawful agreement, it is insufficient to state a claim where that conduct "was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed . . . behavior." *Iqbal*, 129 S. Ct. at 1250. In light of the far more likely possibility that the various incidents occurring over the long history of Plaintiff's incarceration were unrelated, Plaintiff fails to state a plausible claim of conspiracy.

Furthermore, Plaintiff cannot show that he was deprived of a federal right as Plaintiff does not have a constitutional right to an effective grievance procedure. *See Walker,* 128 F. App'x

- 13 -

at 445. In addition, Plaintiff's right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file an institutional grievances. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343 (1996); *Bounds v. Smith*, 430 U.S. 817, 821-24 (1977). The exhaustion requirement only mandates exhaustion of available administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff was improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. In light of the foregoing, the Court finds that Plaintiff fails to state a cognizable claim arising from the prison grievance process.

Because Plaintiff's only claims against Defendants Storey, Ketcik, Armstrong, Guirrant, Hessel, McLean, Boynton, Nylander, Masker and Brown concern the grievance process, they will be dismissed from this action.

### C.     **Sexual Misconduct Charge**

Plaintiff claims that Defendant Willis brought a false charge of sexual misconduct against him, which constituted malicious prosecution and violations of his Eighth and Fourteenth Amendment rights.

Plaintiff's claim of malicious prosecution arises under state law. Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Plaintiff's challenge to the enforcement of state law therefore fails to state a claim under § 1983. Moreover, to the extent that Plaintiff seeks to invoke this Court's supplemental jurisdiction over the state-law claim, the Court declines to exercise jurisdiction. The Sixth Circuit routinely has held that, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the state-law claims should be dismissed without reaching

- 14 -

their merits.  *Landefeld v. Marion Gen. Hosp.*, *Inc.,* 994 F.2d 1178, 1182 (6th Cir. 1993); *Faughender v. City of N. Olmsted, Ohio*, 927 F.2d 909, 917 (6th Cir. 1991).  Plaintiff's state-law claim therefore will be dismissed without prejudice.

Plaintiff also fails to state a claim under the Eighth Amendment.  The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes.  Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency."  *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981).  The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain."  *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346).  The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities."  *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998).  The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement."  *Rhodes*, 452 U.S. at 348 (citation omitted).  Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment."  *Ivey*, 832 F.2d at 954.

A major misconduct charge, standing alone, clearly does not rise to the level of extreme deprivation or infliction of pain protected by the Eighth Amendment.  Moreover, to the extent Plaintiff alleges that he was sexually harassed by Defendant Willis, he fails to state an Eighth Amendment claim.  "To prevail on a constitutional claim of sexual harassment, an inmate must prove, as an objective matter, that the alleged abuse or harassment caused 'pain' and, as a subjective matter, that the officer in question acted with a sufficiently culpable state of mind."  *Freitas v. Ault*, 109 F.3d 1335, 1338 (8th Cir. 1997) (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)). Circuit

- 15 -

courts consistently have held that sexual harassment, absent contact or touching, does not satisfy the objective requirement because such conduct does not constitute the unnecessary and wanton infliction of pain. *See Morales v. Mackalm*, 278 F.3d 126, 132 (2d Cir. 2002) (allegations that prison guard asked prisoner to have sex with her and to masturbate in front of her and other female staffers did not rise to level of Eighth Amendment violation); *Barney v. Pulsipher*, 143 F.3d 1299, 1311 n.11 (10th Cir. 1998) (allegations that county jailer subjected female prisoners to severe verbal sexual harassment and intimidation was not sufficient to state a claim under the Eighth Amendment); *Howard v. Everett*, No. 99-1277EA, 2000 WL 268493, at *1 (8th Cir. Mar. 10, 2000) (sexual comments and gestures by prison guards did not constitute unnecessary and wanton infliction of pain); *Zander v. McGinnis*, No. 97-1484, 1998 WL 384625, at *2 (6th Cir. June 19, 1998) (verbal abuse of mouthing "pet names" at prisoner for ten months failed to state an Eighth Amendment claim); *Murray v. U.S. Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) (verbal abuse in the form of offensive remarks regarding a transsexual prisoner's bodily appearance, transsexualism, and presumed sexual preference cannot state an Eighth Amendment claim). Plaintiff does not allege that Willis made any sexual comments to him, let alone touched him in a sexual manner. Accordingly, he fails to state an Eighth Amendment claim against her.

Likewise, Plaintiff fails to state a Fourteenth Amendment due process claim. Plaintiff claims that the major misconduct charge against him was "false." A prisoner's ability to challenge a prison misconduct conviction depends on whether the conviction implicated any liberty interest. In the seminal case in this area, *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Court prescribed certain minimal procedural safeguards that prison officials must follow before depriving a prisoner of good-time credits on account of alleged misbehavior. The *Wolff* Court did not create a free-

- 16 -

floating right to process that attaches to all prison disciplinary proceedings; rather the right to process arises only when the prisoner faces a loss of liberty, in the form of a longer prison sentence caused by forfeiture of good-time credits:

> It is true that the Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison.  But here the State itself has not only provided a statutory right to good time but also specifies that it is to be forfeited only for serious misbehavior.  Nebraska may have the authority to create, or not, a right to a shortened prison sentence through the accumulation of credits for good behavior, and it is true that the Due Process Clause does not require a hearing "in every conceivable case of government impairment of private interest."  But the State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment "liberty" to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated.

*Wolff*, 418 U.S. at 557 (citations omitted).

The Sixth Circuit has examined Michigan statutory law, as it relates to the creation and forfeiture of disciplinary credits[3] for prisoners convicted for crimes occurring after April 1, 1987. In *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007), the court determined that loss of disciplinary credits does not necessarily affect the duration of a prisoner's sentence.  Rather, it merely affects parole eligibility, which remains discretionary with the parole board.  481 F.3d at 440.  Building on this ruling, in *Nali v. Ekman*, 355 F. App'x 909 (6th Cir. 2009), the court held that a misconduct citation in the Michigan prison system does not affect a prisoner's constitutionally protected liberty interests, because it does not necessarily affect the length of confinement.  355 F. App'x at 912; *accord, Wilson v. Rapelje*, No. 09-13030, 2010 WL 5491196, at *4 (E.D. Mich. Nov. 24, 2010) (Report & Recommendation) ("plaintiff's disciplinary hearing and major misconduct sanction does not

---

[3] For crimes committed after April 1, 1987, Michigan prisoners earn "disciplinary credits" under a statute that abolished the former good-time system.  MICH. COMP. LAWS § 800.33(5).

implicate the Fourteenth Amendment Due Process Clause"), adopted as judgment of court, Order of Jan. 4, 2011. In the absence of a demonstrated liberty interest, Plaintiff has no due-process claim. *See Bell v. Anderson*, 301 F. App'x 459, 461-62 (6th Cir. 2008). Moreover, Plaintiff cannot show injury to his liberty interest because he was found not guilty of the offense.

Even in the absence of a protectible liberty interest in disciplinary credits, a prisoner may be able to raise a due-process challenge to prison misconduct convictions that result in a significant, atypical deprivation. *See Sandin v. Connor*, 515 U.S. 472 (1995). Plaintiff has not identified any significant deprivation arising from the misconduct charge. Because Defendant Robbins found Plaintiff not guilty of the offense, Plaintiff did not receive any punishment as a result of the charge. Plaintiff, therefore, fails to state a claim against Defendant Willis. Moreover, to the extent Plaintiff asserts a due process claims against Defendant Robbins arising from misconduct proceedings, he fails to state a claim against him.

### D.      Payment of fees to the Gogebic County Circuit Court

Plaintiff also raises claims associated with the payment of fees from his prisoner account to the Gogebic County Circuit Court. Plaintiff contends that the funds owed for a previous lawsuit were removed from his prisoner account, but never were remitted to the state court. He further claims that funds were removed from his prisoner account from December 2007 through March 2008 without his knowledge or consent. Plaintiff asserts violations of his First Amendment right of access to the courts and his Fourteenth Amendment due process rights.

It is clearly established that prisoners have a constitutionally protected right of access to the courts under the First and Fourteenth Amendments. *See Lewis*, 518 U.S. at 354; *Bounds*, 430 U.S. at 821; *Wolff*, 418 U.S. at 556. Prison officials have a two-fold duty to protect a prisoner's right

- 18 -

of access to the courts. *McFarland v. Luttrell*, No. 94-6231, 1995 WL 150511, at *3 (6th Cir. Apr. 5, 1995). First, they must provide affirmative assistance in the preparation of legal papers in cases involving constitutional rights, in particular criminal and habeas corpus cases, as well as other civil rights actions relating to the prisoner's incarceration. *Id.* (*citing Bounds*, 430 U.S. at 824-28). Second, the right of access to the courts prohibits prison officials from erecting any barriers that may impede the inmate's accessibility to the courts. *Id.* (*citing Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992)). In order to state a viable claim for interference with his access to the courts, a plaintiff must show actual injury to pending or contemplated litigation. *See Lewis*, 518 U.S. at 349; *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. Plaintiff does not specifically allege that he suffered any injury to pending or contemplated litigation resulting from the alleged failure of the prison to remit the funds to the state court. Consequently, Plaintiff fails to state an access to the courts claim.

Plaintiff also alleges that funds were improperly removed from his prisoner account without his knowledge or consent in violation of his due process rights. Plaintiff's due process claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivation of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984). Because Plaintiff's claim is premised upon allegedly unauthorized negligent acts of a state official,

he must plead and prove the inadequacy of state post-deprivation remedies.  *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action.  *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

    Plaintiff has not sustained his burden in this case.  Plaintiff has not alleged that state post-deprivation remedies are inadequate.  Moreover, numerous state post-deprivation remedies are available to him.  First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation.  MICH. DEP'T OF CORR., Policy Directive 04.07.112, ¶ B (effective Nov. 15, 2004).  Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board.  MICH. COMP. LAWS § 600.6419; Policy Directive, 04.07.112, ¶ B.  Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments, commissions, boards, institutions, arms, or agencies."  MICH. COMP. LAWS § 600.6419(1)(a).  The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property.  *See Copeland*, 57 F.3d at 480.  Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property.  Accordingly, Plaintiff fails to state a claim.

### **Conclusion**

    Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed as frivolous or for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3).  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).  For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal.  Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.

Dated:   _____8/26/2011_____        _____*/s/ R. Allan Edgar*_____
                                                          R. Allan Edgar
                                                          United States District Judge

- 21 -